IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. MICHAEL LEE BEVINS, Defendant. | No. 10-CR-30 CJW-MAR<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

This matter is before the Court on a First Supplemental and Substituted Petition to Revoke Supervision ("Petition"). (Doc. 98). On July 29, 2021, the Court held an evidentiary hearing on the Petition. (Doc. 104). At the conclusion of the hearing, the Court found by a preponderance of the evidence that defendant violated the terms and conditions of supervised release, as alleged in the Petition, and sentenced defendant to 18 months' imprisonment, followed by an 8-year term of supervised release. Specifically, the Court found defendant committed the following violations:

Violation 1: Failure to Participate in Substance Abuse Testing

Violation 2: New Law Violation; Assault on Peace Officer & Carrying Weapons

Violation 3: Frequenting Places Where Children Congregate

Violation 4: Possession of a Dangerous Weapon

Because there is little published caselaw on this issue and some misinformation circulating in the public realm, the Court issues this Memorandum and Order to elaborate and

memorialize its ruling that defendant's possession of a machete constitutes a dangerous weapon for purposes of supervised release.

## II. BACKGROUND

Defendant was convicted in October 2010 of failing to register as a sex offender and sentenced to ten years in prison, followed by ten years on supervised release. (Doc. 56). He began supervised release on April 1, 2020. (Doc. 98, at 1). On July 3, 2021, defendant had pitched a tent and had a camp fire on a sandbar in the Cedar River next to the Minne Estema Park, located in Vinton, Iowa. He parked his vehicle next to another vehicle near a boat ramp across from the sandbar.

At about 9:30 p.m., Benton County Iowa Conservation Ranger Benjamin Hach was on patrol in the park. He was driving his government-issued truck, which has a large Conservation Office logo emblazoned on the doors. Officer Hach was in uniform, which included shoulder patches identifying him as a conservation officer. Officer Hach spotted defendant's camp site. Officer Hach, who had become a peace officer in January 2021, did not know whether camping on a sandbar was permitted, so he decided to record the license plates of the two vehicles parked near the boat ramp. Officer Hach got out of his truck and walked over to the vehicles to record their license plate numbers. About the time he finished this, he heard a man shouting aggressively at him from the camp site and saw the man approaching toward him across the shallow water between the sand bar and the boat ramp. It was sufficiently dark that Officer Hach could not tell whether the man was armed. Officer Hach was unarmed, so he got back into his truck and left the area.

For approximately the next ten minutes Officer Hach continued with his duties of patrolling the park. When he pulled into a circular drive of the park's primitive camp site, he saw another vehicle follow him in. Officer Hach recognized it as one of the two vehicles previously parked at the boat ramp. As Officer Hach continued around the circle

to head back out, the other vehicle came to a stop, blocking Officer Hach's exit. Officer Hach then saw the defendant get out of that vehicle and quickly close the distance to Officer Hach's service vehicle. Defendant was carrying a machete, which Officer Hach described as having a fixed steel blade of approximately a foot in length.

Defendant approached Officer Hach's driver's side door and tapped hard enough on the window with the blade of the machete to scratch the window. Defendant was shouting obscenities at Officer Hach and continued to do so for about a minute before defendant finally left, got in his vehicle, and drove away.

### III. DISCUSSION

The Court finds that defendant's possession of the long-bladed knife, or machete, which he used to threaten a peace officer constitutes a dangerous weapon for purposes of supervised release. Defendant argued that he did not possess a dangerous weapon, relying on a definition of "dangerous weapon" found on a United States Court website purporting to define a dangerous weapon for purposes of supervised release. (Exhibit F). The website provides no attribution for its definition. The Court finds that the website's definition is not the legal definition of dangerous weapon and finds that defendant's possession of a machete under the circumstances here constituted possession of a dangerous weapon for purposes of a supervised release violation.

First, a knife with a fixed blade constitutes a "dangerous weapon" as that term is typically understood under federal law. *See* U.S. SENT'G GUIDELINES MANUAL § 1B1.1 cmt. n.1(E) (U.S. SENT'G COMM'N 2018) (defining a "dangerous weapon" as "an instrument capable of inflicting death or serious bodily injury"); *see also* 18 U.S.C. § 930(g)(2) (explaining that for purposes of § 930, a dangerous weapon "means a weapon, device, [or] instrument . . . that is used for, or is readily capable of, causing death or serious bodily injury, except that such term does not include a pocket knife with a blade

3

of less than 2 ½ inches in length."). A machete with a fixed blade of approximately a foot fits these definitions of a dangerous weapon.

Second, multiple courts have concluded that a knife can constitute a dangerous weapon under the terms of a defendant's supervised release. *See United States v. Wiley*, 703 F. App'x 950, 952 (11th Cir. 2017) (per curiam) (finding a folding knife with a three-inch blade constituted a dangerous weapon under Florida law for purposes of revocation of supervised release); *United States v. Tumea*, 810 F.3d 563, 566-67 (8th Cir. 2016) (explaining that a knife designed to look like a carabiner constituted a dangerous weapon under the terms of the defendant's supervised release); *United States v. Wasielak*, 253 F. App'x 822, 823-24 (11th Cir. 2007) (per curiam) (affirming district court's revocation for violations, including possession of a dangerous weapon when defendant confronted law enforcement officers in an aggressive manner with a large folding knife and a large hunting knife); *United States v. Garcia-Mejia*, 394 F.3d 396, 398 (5th Cir. 2004) (per curiam) (explaining that a condition of supervised release prohibiting the possession of a dangerous weapon would not prevent the defendant from using a steak-knife at a restaurant to eat his meal but would prevent the defendant from carrying a steak-knife in his pocket for protection), *vacated on other grounds*, 545 U.S. 1102 (2005); *United States v. Thomas*, No. 06-CR-048-WMC-01, 2011 WL 4356231, at *1 (W.D. Wis. Sept. 16, 2011) (finding defendant's possession of a steak knife in his suitcase constituted a dangerous weapon for purposes of revocation of supervised release); *United States v. LaClaire*, No. 3:08-CR-30032-RAL, 2017 WL 959217, at *2 (D. S.D. Mar. 13, 2017) (finding possession of a five-inch pocket knife during an assault constituted a dangerous weapon for purposes of supervised release); *United States v. Alston*, No. 98-CR-176A, 2007 WL 2746901, at *5 (W.D.N. Y Sept. 19, 2007) (concluding that a knife with a three-to-four-inch blade was a dangerous weapon under terms of defendant's supervised release); *United States v. Pangelinan*, No. CR. 99-

4

00001, 2007 WL 1175033, at *1-3 (D. Guam Apr. 23, 2007) (holding that a three-inch pocket knife was a dangerous weapon under the terms of defendant's supervised release); *see also United States v. Smith*, 561 F.3d 934, 939 (9th Cir. 2009) (en banc) (stating when discussing 18 U.S.C. § 113(a)(3) that a knife was an "[i]nherently dangerous weapon").

Third, the circumstances support the conclusion that the machete was a dangerous weapon. Defendant confronted a law enforcement officer with the machete in an aggressive manner. In short, defendant used the machete as a dangerous weapon, whatever its use might otherwise have been.

## IV. CONCLUSION

This Court finds by a preponderance of the evidence that defendant violated the terms of his supervised release by possessing a dangerous weapon. As stated on the record during the hearing, the Court also found the government proved by a preponderance of the evidence that defendant also committed the other three violations.

**IT IS SO ORDERED** this 30th day of July, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa